# Exhibit A

Cause No. _____

| | | |
|---|---|---|
| SEEMARK BRANDS INC., EMILY PARR, AND MAJEED HEMMAT, | § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | HARRIS COUNTY, TEXAS |
| v. | § § | |
| HOLIFROG, INC., | § § | _____ JUDICIAL DISTRICT |
| Defendant. | § § | |

## ORIGINAL PETITION FOR DECLARATORY JUDGMENT

Plaintiffs Seemark Brands Inc. ("Seemark" or "Seller"), Emily Parr, and Majeed Hemmat (collectively, the "Seller Parties" or "Plaintiffs") file this Original Petition for Declaratory Judgment against Defendant HoliFrog, Inc. ("Buyer" or "Defendant") and respectfully show the Court as follows:

### I.    NATURE OF THE ACTION

1.    This is a case of Buyer's remorse, which has necessitated this declaratory judgment action by Seller Parties. Plaintiffs seek a declaration of their rights under an Asset Purchase Agreement dated February 27, 2026 (the "APA"), by and among Plaintiffs as the Seller Parties and Defendant as the Buyer.

2.    Pursuant to the APA, Seller Parties sold assets that constitute a line of skin care products branded "HoliFrog" to the Buyer.

3.    On May 9, 2026, Buyer sent Seller Parties a notice of a purported claim for indemnity under the APA ("Claim Notice"). Buyer alleged that Seller breached certain representations and warranties in the APA, demanded $750,000 in damages, threatened to sue Sellers and to unwind the entire transaction. Sellers responded to the Claim Notice, and vehemently disputed Buyer's allegations. Buyer responded with only more threats to sue.

4. Buyer and Seller Parties have an actual controversy regarding the rights and obligations imposed upon the parties by the APA, and such controversy is causing or immediately threatening harm to the Seller Parties' rights under the APA.

5. Sellers seek declarations under Chapter 37 of the Texas Civil Practice and Remedies Code concerning the construction and application of certain provisions of the APA, including but not limited to representations and warranties, indemnity, and escrow provisions.

## II.    DISCOVERY CONTROL PLAN AND RULE 47 STATEMENT

6. Pursuant to Texas Rule of Civil Procedure 190.1, Plaintiffs intend that discovery be conducted under Level 2.

7. Pursuant to Texas Rule of Civil Procedure 47, Plaintiffs seek non-monetary relief, i.e., a declaratory judgment, and damages of consisting of attorneys' fees in an amount to be determined. The damages sought are within the jurisdictional limits of the Court.

## III.    PARTIES

8. Plaintiff Seemark Brands Inc. ("Seller") is a Delaware corporation formerly known as Virgin Frog, LLC, a New York limited liability company. Seemark's notice address under the APA is 1045 10th Street #605, Miami Beach, Florida 33139.

9. Plaintiff Emily Parr is an individual residing in Chilmark, Massachusetts, and a Seller Party under the APA.

10. Plaintiff Majeed Hemmat is an individual residing in Miami Beach, Florida, and a Seller Party under the APA.

11. Defendant HoliFrog, Inc. ("Buyer") is a Texas corporation within its principal place of business at 1000 Main Street, Suite 2300 PMB A204, Houston, Harris County, Texas.

Defendant may be served through its registered agent for service of process, Registered Agents, Inc., 5900 Balcones Drive, Suite 100, Austin, Texas 78731.

## IV.    JURISDICTION AND VENUE

12.    This Court has subject-matter jurisdiction pursuant to TEX. CIV. PRAC. & REM. CODE § 37.003(a) and § 37.004(a) because Plaintiffs seek declarations of rights, status, and legal relations under a contract.

13.    This Court has personal jurisdiction over Defendant HoliFrog, Inc. because it is a Texas corporation, with a principal office in Houston, Texas, and it consented in writing to personal jurisdiction in courts in Houston, Harris County, Texas for actions arising under the APA.

14.    Venue is proper in Harris County, Texas pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(3) because Defendant's principal office in this State is in Harris County. Venue is also proper under the APA's forum- and venue-selection clauses.

## V.    FACTUAL ALLEGATIONS

15.    The APA is a written contract executed as of February 27, 2026. Under the APA, Seller sold, and Buyer purchased, specified assets used in the operation of the HoliFrog skincare line. The sale closed on February 27, 2026.

16.    On May 9, 2026, Buyer sent a purported Claim Notice under Section 7.4(a) of the APA, which outlines procedures for indemnity claims between Seller and Buyer.

17.    In its Claim Notice, Buyer alleges that Seller Parties breached certain representations and warranties in the APA and seeks to recover damages allegedly caused by same. When viewed *in toto*, the Claim Notice attempts to transform the plain language of the APA's provisions into a "guarantee" that the revenues generated by the HoliFrog assets would not decline

after the sale. Buyer's interpretation of the APA's provisions is incorrect, and Seller Parties seek a ruling from this Court regarding same.

18.     Preliminarily, the Claim Notice is replete with factual inaccuracies, and the arguments and allegations that Buyer promotes within it are inconsistent and based upon false premises. Seller Parties specifically dispute and deny all of the allegations within the Claim Notice.

19.     In general, the Claim Notice alleges that "as part of the APA, Seller disclosed HoliFrog's 20 largest customers by dollar volume," and "[t]en of those customers were [Customer X][1] franchisees." The Claim Notice further alleges, "in connection with that disclosure, Seller represented and warranted, among other things, that it was not aware of any Material Adverse Effect that would negatively impact the value of the assets being sold; that it had accurately disclosed the contracts, arrangements, and understandings affecting those customers; and that none of the [Customer X] franchisees had taken, or intended to take, any action that would materially reduce their purchase from HoliFrog."

20.     Buyer's characterization of the terms of the APA and the resulting representations made by Seller, are disputed. The plain language of the APA, not Buyer's inaccurate and incomplete *post-hac* framing of it, is controlling. This Court, not Buyer, will declare the meaning of the APA's plain language.

21.     Building upon its inaccurate framing of the APA's alleged requirements and Seller's alleged representations, the Claim Notice further alleges that the Seller's representations were material, that Seller Parties had "repeatedly and expressly represented throughout due diligence that all purchasing decisions for HoliFrog products were made at the individual

---

[1] The identity of the "customer" in Buyer's Claim Notice could be considered confidential. As such, references to that "customer" have been replaced with Customer X.

franchisee level and that there was no reason to expect future [Customer X] revenue to differ materially from historical revenue," and that "[t]hese representations were false."

22.    As noted above, Buyer's characterization of the terms of the APA and the related representations made by Seller are disputed. But the Claim Notice plainly shows that the motivating factor behind Buyer's inaccurate claims is that, according to Buyer, the business is not performing well:

> *"After closing, HoliFrog's sales to [Customer X] franchisees-including the ten [Customer X] franchisees Seller identified among HoliFrog's largest customers-collapsed."*

23.    Assuming that Buyer's allegation of a "collapse" in sales is true, the plain terms of the APA make clear that this is not Seller's responsibility. Among other provisions, Section 3.18 of the APA provides that "Except as otherwise expressly set out in this Article III, Seller makes no representation or warranty regarding a Material Customer or any other customer or Company Supplier continuing to engage in business with Buyer after the Closing of the sale of the assets of the Business to Buyer."

24.    In an effort to avoid the clear language of the APA and rewrite the agreement to make Seller the *de facto* guarantor of the success of Buyer's business, the Claim Notice promotes an erroneous interpretation of several provisions within the APA, including §§ 3.5, 3.14(a), 3.18, 3.29, 5.6, 7.2, 7.5, and 7.8.  In doing so, Buyer also ignores other relevant sections of the APA entirely.

25.    Relying upon its erroneous interpretation of the APA's provisions and an inaccurate description of Seller's actions and representations, the Claim Notice "demands indemnification in the amount of $750,000."  Buyer further threatens that "If this is not paid within 30 days Buyer

intends to unwind the entire transaction and will recover expenses, fees, lost profits, and all other damages related thereto."

26.    Buyer's Claim Notice creates a controversy concerning the construction and interpretation of the APA, including but not limited to §§ 3.5, 3.14, 3.18, 3.29, 5.6, 7.2, 7.5, 7.6, and 7.8.

27.    Section 3.5 provides, in relevant part, that "*[s]ince January 5, 2026*," no event has occurred that has had a Material Adverse Effect on the business sold. "Material Adverse Effect" is defined as an "event, effect, condition, occurrence, action or omission that, individually or in the aggregate, has had or would reasonably be expected to (i) have a material adverse effect on the business, assets, properties, financial condition, results of operations or prospects of the Business…"

28.    Section 3.14 concerns Company Contracts. Disclosure Schedule 3.14 lists the Company Contracts.

29.    Section 3.18 requires certain disclosures from Seller. Based upon Buyer's Claim Notice, there is a dispute between the parties regarding the nature and extent of the required disclosures.

30.    Section 3.29 states that no representation or warranty of the Seller in the APA contains any untrue statement of material fact or omits facts necessary to make the statements in the APA not misleading.

31.    Section 5.6, in relevant part, requires Seller to notify Buyer if (a) there is any inaccuracy of any representation or warranty that could cause closing conditions not to be satisfied, or (d) that any customer has given notice that it is materially adversely modifying its relationship with the Business "*as a result of the transactions contemplated by this Agreement*."

32.    Article 7 of the APA deals with indemnity. Section 7.2 requires Seller to indemnify buyer for "Losses" resulting from "any breach of, or inaccuracy in, any representation or warranty under Article III" or any default by Seller of its covenants under the APA.

33.    Section 7.4 outlines the procedures for making an indemnity claim. Section 7.5 provides that if it is adjudicated that a Buyer Indemnified Party is owed indemnity, the payment is first made out of the Escrow Fund (established with a portion of the purchase price, per Section 2.5), and if the amount exceeds the Escrow Fund, the balance is paid by the Seller Parties.

34.    Section 7.6 limits any claim for indemnity to a fixed amount (i.e., a "Cap"), except for claims related to "Fundamental Representations," breach of Article V covenants, or fraud, intentional misrepresentation, or intentional breach.

35.    Plaintiffs/Seller Parties are persons interested under a written contract and whose rights, status, and legal relations are affected by that contract. Defendant/Buyer has served Plaintiffs with a Claim Notice, in which it purports to assert indemnity rights under the APA and has demanded payment, escrow relief, and other remedies.

36.    Plaintiffs are entitled to have the Court determine questions of construction and declare the parties' rights, status, and legal relations under the APA.

## VI.    CLAIMS FOR DECLARATORY JUDGMENT

### COUNT 1 – APA SECTION 3.5

37.    Plaintiffs incorporate the preceding paragraphs by reference.

38.    Plaintiffs seek a declaration that Section 3.5 of the APA only concerns events that took place after January 5, 2026.

39.    The APA distinguishes pre-closing facts from post-January 5, 2026, changes. Section 3.5 begins, "*Since January 5, 2026,*" which expressly limits its scope to events that occur

after that date. In Subpart (a) of Section 3.5, Sellers represent that "no event has occurred" since January 5, 2026, that has had a Material Adverse Effect.

40.     Plaintiff seeks a declaration that Section 3.5 subpart (a) applies only to post-January 5, 2026, events, and that Plaintiffs have no liability for any alleged breach of the representations and warranties in Section 3.5 based on alleged conduct before that date.

41.     Plaintiffs further request a declaration that APA Section 3.5 does not guarantee continued revenue from customers, continued purchase orders from customers, retention of customers, or continued post-closing business from customers.

### COUNT 2 – APA SECTION 3.14

42.     Plaintiffs incorporate the preceding paragraphs by reference.

43.     Section 3.14 requires Seller to list the "Company Contracts" that were included in the asset sale.

44.     Plaintiffs request a declaratory judgment that any and all representations and warranties contained in Section 3.14 pertain only to the Company Contracts listed in Schedule 3.14.

45.     Plaintiffs further request a declaration that APA Section 3.14 does not guarantee continued revenue from customers, continued purchase orders from customers, retention of customers, or continued post-closing business from customers.

### COUNT 3 – APA SECTION 3.18

46.     Plaintiffs incorporate the preceding paragraphs by reference.

47.     Section 3.18 requires disclosure of Material Customers defined as the top 20 customers by sales volume from the fiscal year ending December 31, 2025, to January 31, 2026.

48. Section 3.18 states that "*[s]ince the Financial Statement Date*" no customer listed on Disclosure Schedule 3.18 has "materially reduced its purchases from or sales to, Seller." The Financial Statement Date is defined as February 16, 2026.

49. Plaintiffs further request a declaration that APA Section 3.18 does not guarantee continued revenue from customers, continued purchase orders from customers, retention of customers, or continued post-closing business from customers.

### COUNT 4 – APA SECTION 5.6

50. Plaintiffs incorporate the preceding paragraphs by reference.

51. Section 5.6 requires Seller to notify Buyer upon the occurrence of several listed events, most of which are not relevant here.

52. Section 5.6 subpart (a) requires notification of "any inaccuracy of any representation or warranty contained in this Agreement that could reasonably be expected to cause the conditions set forth in Article VI. hereof not to be satisfied." Article VI relates to Closing and Closing Conditions.

53. Plaintiffs seek a declaration that Section 5.6 subpart (a) has no applicability to any alleged reduction in sales volume from any customer, since such reduction has no effect on Closing or Closing Conditions.

54. Plaintiffs further request a declaration that APA Section 5.6 does not guarantee continued revenue from customers, continued purchase orders from customers, retention of customers, or continued post-closing business from customers.

### COUNT 5 – APA ARTICLE 2.5 AND ARTICLE 7

55. Plaintiffs incorporate the preceding paragraphs by reference.

56.     Section 2.5 escrowed a specific portion of the purchase price with an escrow agent, the Escrow Fund.

57.     Section 7.2 establishes the circumstances under which Seller is obligated to defend, indemnify, and hold Seller harmless.

58.     Section 7.4 establishes the procedures that apply to a person making a claim for indemnification.

59.     Section 7.4 and Section 7.5 establish the procedures by which Buyer can obtain some or all of the Escrow Fund. Plaintiffs request a declaration that Buyer has no contractual right under the APA to any money from the Escrow Fund unless and until Buyer obtains a valid and final judgment from this Court establishing its entitlement to same under the APA.

60.     Section 7.6 limits any claim for indemnity by the Buyer to a specified amount, with certain limited exceptions. The Cap applies "except for Losses (a) relating to breach of Fundamental Representations, (b) relating to breaches under Article V. Covenants, and (c) arising as a result of fraud, intentional misrepresentation, or the intentional breach of a representation, warranty or covenant."

61.     Plaintiffs seek a declaration that the "Fundamental Representations" exception to the Cap, as defined in Section 7.1, does not include any representations or warranties in Sections 3.5, 3.14, 3.18, or 3.29 of the APA.

62.     Plaintiffs seek a declaration, as set forth in Count 4 above, that the alleged reduction in sales volume by Customer X did not trigger Seller's obligation to make any notification under Covenant Section 5.6. Therefore, Plaintiffs seek a declaration that the "Article V. Covenants" exception to the Cap does not apply.

63.    Based on the foregoing, Plaintiffs seek a declaration that any overall collective liability for indemnity to Buyer, which liability is expressly denied, is limited to the Cap established by Section 7.6.

**COUNT 6 – SECTION 3.18 AND 9.1**

64.    Plaintiffs incorporate the preceding paragraphs by reference.

65.    Section 3.18 says that except as otherwise set forth in Article III, Seller makes no representation or warranty that any Material Customer, any other customer, or any Company Supplier will continue to engage in business with Buyer after closing.

66.    Section 9.1 recites that the APA "constitute the entire agreement and supersede all oral agreements and understandings and all written agreements prior to the date hereof between or on behalf of the Parties with respect to the subject matter hereof."

67.    Plaintiffs seek a declaration that it cannot be held liable for any such extra-contractual representations because such claims are barred by the APA.

**VII.    ATTORNEY'S FEES AND COSTS**

68.    Plaintiffs request recovery of costs and reasonable and necessary attorney's fees under Texas Civil Practice and Remedies Code § 37.009 and any other applicable law because such an award would be equitable and just.

**VIII.    CONDITIONS PRECEDENT**

69.    All conditions precedent to Plaintiffs requested relief have been performed, have occurred, have been waived, or have been excused.

## IX.    PRAYER

70.    Plaintiffs respectfully request that Defendant HoliFrog, Inc. be cited to appear and answer and that, after notice and hearing or trial as appropriate, the Court enters judgment in favor of Plaintiffs and against Defendant as set forth herein.

May 13, 2026                                        Respectfully submitted,

*/s/ Josh C. Thomas*

Josh C. Thomas (24066185)
KEAN MILLER LLP
711 Louisiana Street, Ste 1800 South Tower
Houston, TX  77002
(713) 844-3000
josh.thomas@keanmiller.com

Sean T. McLaughlin (La. 31870)
*pro hac admission to be applied for*
Zoe W. Vermeulen (La. 34804)
*pro hac admission to be applied for*
909 Poydras Street, Suite 3600
New Orleans, La. 70112
Sean.mclaughlin@keanmiller.com
Zoe.vermeulen@keanmiller.com

**Attorneys for Plaintiffs Seemark Brands Inc.,
Emily Parr, and Majeed Hemmat**