IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SEEMARK BRANDS, INC., EMILY PARR, & MAJEED HEMMAT, | § § § § | |
| *Plaintiffs/ Counter-Defendants* | § § | |
| v. | § § | Civil Action No. 4:26-cv-03852 |
| HOLIFROG, INC., | § § § | |
| *Defendant/ Counter-Plaintiff* | § | |

**HOLIFROG, INC.'S ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendant HoliFrog, Inc. ("HoliFrog" or "Buyer") files this Answer, Affirmative Defenses, and Counterclaims against Seemark Brands Inc. f/k/a Virgin Frog, LLC, Emily Parr, and Majeed Hemmat (together, "Seller Defendants") and would respectfully show as follows:

### I.    ANSWER

1.    Denied. This case is about the Seller Defendants' fraud and breaches of the APA, not "buyer's remorse." Seller knew before closing that a major revenue channel would collapse immediately after closing, concealed that fact, deleted the written evidence, took Buyer's money, and then ran to court for declaratory absolution after Buyer served a detailed indemnity Claim Notice.

2.    Admitted that the APA concerns Seller's sale of assets relating to the HoliFrog skincare line. HoliFrog denies the remaining allegations to the extent they omit or mischaracterize the APA, the transaction, Seller's representations, or Seller's misconduct.

3.    Admitted that HoliFrog sent Seller a Claim Notice under the APA, demanded indemnity, and reserved its right to sue. Denied that the Claim Notice was

"purported" or improper. Denied that Seller "vehemently disputed" the Claim Notice in any legally meaningful way. Denied that HoliFrog's position consists of "threats." HoliFrog served a contractually authorized Claim Notice based on Seller's breaches, fraud, concealment, and indemnity obligations.

4.      Admitted that an actual controversy exists. Denied that the controversy exists in the one-sided, artificial, or incomplete form alleged by Plaintiffs. The real controversy is whether Seller breached the APA, fraudulently induced the transaction, concealed material facts, owes indemnity, must preserve and release escrow funds, and must pay HoliFrog's damages, fees, interest, and other Losses.

5.      Admitted that Plaintiffs seek declarations. Denied that Plaintiffs are entitled to any declaration. HoliFrog further denies that Plaintiffs may use a mirror-image declaratory-judgment action to preempt HoliFrog's affirmative claims and reframe Seller's fraud as a contract-interpretation exercise.

*Discovery Control Plan and Rule 47 Statement*

6.      This allegation concerns Texas state-court procedure and requires no response after removal. To the extent a response is required, HoliFrog denies that Texas Rule of Civil Procedure 190.1 governs this removed federal action.

7.      This allegation concerns Texas state-court pleading rules and requires no response after removal. To the extent a response is required, HoliFrog admits that Plaintiffs seek non-monetary declaratory relief and attorneys' fees, and denies that Plaintiffs are entitled to either.

*Parties*

8.      HoliFrog lacks knowledge or information sufficient to admit or deny Seemark's current corporate status, former name, or address, and therefore denies the allegations. HoliFrog admits that the APA identifies Seemark as Seller.

9.      HoliFrog lacks knowledge or information sufficient to admit or deny Parr's residence and therefore denies the allegation. HoliFrog admits that Parr is a Seller

2

Party under the APA.

10.     HoliFrog lacks knowledge or information sufficient to admit or deny Hemmat's residence and therefore denies the allegation. HoliFrog admits that Hemmat is a Seller Party under the APA.

11.     Admitted that HoliFrog is a Texas corporation. HoliFrog denies the remaining allegations to the extent they are inaccurate, incomplete, or inconsistent with the record.

*Jurisdictional Allegations*

12.     Denied as stated. This case has been removed to federal court. The Texas Declaratory Judgments Act does not supply subject-matter jurisdiction in this Court. The Court has subject-matter jurisdiction under 28 U.S.C. § 1332 and/or other applicable federal jurisdictional statutes as set forth in ECF 1.

13.     Admitted that HoliFrog is a Texas corporation and that the APA contains forum-related provisions. HoliFrog denies the remaining allegations to the extent they misstate or incompletely characterize the APA.

14.     Denied as stated. This case has been removed to federal court. HoliFrog admits that venue is proper in this Court and that the APA contains forum- and venue-related provisions.

*Factual Allegations*

15.     Admitted that the APA is a written contract dated February 27, 2026, and that the transaction closed on or about February 27, 2026. HoliFrog denies the remaining allegations to the extent they omit or mischaracterize the transaction, the APA, the assets, Seller's representations, or Seller's misconduct.

16.     Admitted that HoliFrog sent a Claim Notice under Section 7.4(a) of the APA. Denied that the Claim Notice was merely "purported."

17.     Denied. HoliFrog does not seek to transform the APA into a revenue guarantee. HoliFrog seeks to enforce the APA according to its terms and to recover for

3

Seller's lies, omissions, concealment, contractual breaches, and indemnity obligations. Seller's attempt to reduce this case to a "post-closing revenue decline" is false and misleading.

18.     Denied. The Claim Notice accurately identified Seller's breaches, inaccuracies, fraud, concealment, and indemnity obligations based on information then available. HoliFrog further denies Seller's blanket denial of the Claim Notice.

19.     Admitted that the Claim Notice includes allegations concerning Seller's disclosure of top customers, including ███████ franchisees, and Seller's representations and warranties. HoliFrog denies Seller Defendants characterization of those allegations to the extent incomplete, misleading, or inconsistent with the Claim Notice and APA.

20.     Denied. HoliFrog's characterization of the APA, Seller's representations, and Seller's breaches is accurate. HoliFrog admits only that the APA's language controls.

21.     Admitted that the Claim Notice alleged Seller made false representations during diligence concerning ███████ purchasing decisions and future revenue expectations. HoliFrog denies Seller Defendants characterization of those allegations as inaccurate or disputed in good faith.

22.     Denied. HoliFrog's claims are not based on poor business performance. HoliFrog's claims are based on Seller's pre-closing knowledge, false representations, concealment, deletion of evidence, breaches of the APA, and refusal to indemnify Buyer after the concealed facts materialized immediately after closing.

23.     Denied. Section 3.18 does not immunize Seller from liability for false representations, misleading partial disclosures, concealed material facts, inaccurate schedules, undisclosed customer-specific risks known before closing, breaches of Article III, breaches of Article V, fraud, fraudulent inducement, fraud by nondisclosure, or contractual indemnity.

24.     Denied. HoliFrog does not seek to rewrite the APA. Seller does. Seller asks

4

the Court to convert carefully drafted representations, warranties, disclosure obligations, notification covenants, indemnity provisions, fraud carveouts, and non-reliance limitations into a license to lie.

25.    Admitted that HoliFrog demanded indemnification in the amount stated in the Claim Notice and reserved remedies including unwinding the transaction, expenses, fees, lost profits, and other damages. Denied that HoliFrog's demand rested on an erroneous interpretation of the APA or inaccurate description of Seller's conduct.

26.    Admitted that a controversy exists regarding the APA. Denied that Plaintiffs fairly describe that controversy.

27.    The APA speaks for itself. HoliFrog denies any allegation inconsistent with the APA.

28.    The APA and Disclosure Schedule speak for themselves. HoliFrog denies any allegation inconsistent with them.

29.    The APA speaks for itself. HoliFrog denies Seller Defendants cramped interpretation of Section 3.18 and denies that Seller satisfied its disclosure obligations.

30.    The APA speaks for itself. HoliFrog denies any allegation inconsistent with the APA and denies that Seller complied with Section 3.29.

31.    The APA speaks for itself. HoliFrog denies Seller Defendants selective and incomplete characterization of Section 5.6 and denies that Seller complied with Section 5.6.

32.    The APA speaks for itself. HoliFrog admits that Article VII addresses indemnity and that Section 7.2 requires Seller to indemnify Buyer for covered Losses. HoliFrog denies any allegation inconsistent with the APA.

33.    The APA speaks for itself. HoliFrog denies that Section 7.5 requires HoliFrog to obtain a final judgment before Seller's indemnity obligations arise or before escrow preservation is appropriate.

34.    The APA speaks for itself. HoliFrog admits that Section 7.6 contains certain

limitations and exceptions. HoliFrog denies that the Cap limits HoliFrog's claims arising from fraud, intentional misrepresentation, intentional breach, Article V covenant breaches, or other excluded matters.

36. Admitted that Plaintiffs are parties to the APA and that HoliFrog served a Claim Notice asserting indemnity rights and demanding payment, escrow relief, and other remedies. Denied that Plaintiffs are entitled to the declarations they seek.

36. Denied. Plaintiffs seek improper, duplicative, anticipatory, and mirror-image declarations that serve no useful purpose in light of HoliFrog's coercive counterclaims.

*Claims for Declaratory Judgment*

*Count 1 — APA Section 3.5*

37. HoliFrog incorporates its responses above by reference as if fully set out herein.

38. Denied.

39. The APA speaks for itself. HoliFrog denies Seller Defendants interpretation to the extent it would excuse Seller's concealment, misrepresentations, or nondisclosure of known, material, customer-specific facts.

40. Denied.

41. Denied as phrased. HoliFrog does not contend that Section 3.5 is a standalone guarantee of post-closing revenue. HoliFrog contends that Seller breached Section 3.5 and other APA provisions by concealing known, material, customer-specific facts that had or reasonably would be expected to have a Material Adverse Effect.

*Count 2 — APA Section 3.14*

42. HoliFrog incorporates its responses above.

43. The APA speaks for itself. HoliFrog denies Seller Defendants incomplete characterization of Section 3.14.

44. Denied.

45. Denied as phrased. HoliFrog does not contend that Section 3.14 is a standalone revenue guarantee. HoliFrog contends that Seller breached Section 3.14 and other APA provisions by failing to disclose relevant contracts, understandings, commitments, undertakings, forbearances, and arrangements and by making inaccurate or misleading representations.

*Count 3 — APA Section 3.18*

46. HoliFrog incorporates its responses above.

47. The APA speaks for itself. HoliFrog denies Seller Defendants incomplete characterization of Section 3.18.

48. The APA speaks for itself. HoliFrog denies any allegation inconsistent with the APA.

49. Denied as phrased. HoliFrog does not contend that Section 3.18 is a standalone revenue guarantee. HoliFrog contends that Seller breached Section 3.18 by misrepresenting and concealing known facts concerning Material Customers, including ████████ franchisees and the ████████ corporate requirements and changes.

*Count 4 — APA Section 5.6*

50. HoliFrog incorporates its responses above.

51. The APA speaks for itself. HoliFrog denies Seller Defendants characterization of Section 5.6 as incomplete and misleading.

52. The APA speaks for itself.

53. Denied.

54. Denied as phrased. HoliFrog does not contend that Section 5.6 is a standalone revenue guarantee. HoliFrog contends that Seller breached Section 5.6 by failing to notify Buyer of material inaccuracies, customer communications, and developments affecting the truth of Seller's representations and the transaction.

*Count 5 — APA Section 2.5 and Article VII*

55. HoliFrog incorporates its responses above.

56.     Denied. The APA speaks for itself.

57.     HoliFrog admits that Section 7.2 establishes Seller's indemnity obligations. Otherwise, denied.

58.     Denied. The APA speaks for itself.

59.     Denied.

60.     HoliFrog admits that Section 7.6 contains certain limitations and exceptions. HoliFrog denies Seller Defendants interpretation and denies that the Cap limits claims arising from fraud, intentional misrepresentation, intentional breach, Article V covenant breaches, or other excluded matters.

61.     Denied as stated. The APA speaks for itself.

62.     Denied.

63.     Denied.

*Count 6 — Sections 3.18 and 9.1*

64.     HoliFrog incorporates its responses above.

65.     HoliFrog denies Seller Defendants interpretation to the extent Plaintiffs contend Section 3.18 immunizes fraud, fraudulent inducement, fraud by nondisclosure, intentional misrepresentation, misleading partial disclosures, breaches of Article III, breaches of Article V, or indemnity liability.

66.     HoliFrog denies Seller Defendants interpretation to the extent Plaintiffs contend Section 9.1 bars HoliFrog's claims for fraud, fraudulent inducement, fraud by nondisclosure, contractual indemnity, or breaches based on Seller's representations and omissions.

67.     Denied.

**Attorneys' Fees and Costs**

68.     Denied. Plaintiffs are not entitled to fees or costs. HoliFrog is entitled to recover its fees, costs, expenses, and other recoverable Losses.

**Conditions Precedent**

69.     Denied.

*Prayer*

70.     Denied. Plaintiffs are not entitled to the relief requested.

### HOLIFROG'S AFFIRMATIVE DEFENSES

HoliFrog asserts the following affirmative defenses without assuming any burden it does not otherwise bear. HoliFrog reserves the right to amend or supplement these defenses as discovery proceeds.

**First Affirmative Defense — Failure to State a Claim:** Seller Defendants fail to state a claim on which relief can be granted because their declaratory-judgment claim seeks advisory, duplicative, mirror-image declarations designed to preempt HoliFrog's coercive claims.

**Second Affirmative Defense — Declaratory-Judgment Discretion:** The Court should dismiss or decline to entertain Seller Defendants' declaratory-judgment action because it serves no useful purpose, duplicates HoliFrog's coercive claims and Seller's anticipated defenses, and represents an anticipatory procedural maneuver filed after HoliFrog served its Claim Notice.

**Third Affirmative Defense — Duplicative Mirror-Image Claim:** Seller Defendants declaratory-judgment claim duplicates issues that will be resolved by HoliFrog's claims for breach of contract, contractual indemnity, fraud, fraudulent inducement, fraud by nondisclosure, negligent misrepresentation in the alternative, escrow relief, declaratory relief, and equitable relief.

**Fourth Affirmative Defense — Unclean Hands:** Seller Defendants' claims are barred, in whole or in part, by unclean hands. Seller concealed material facts, made false and misleading representations, deleted evidence, and then filed this lawsuit to avoid the consequences of its misconduct.

**Fifth Affirmative Defense — Fraud and Prior Material Breach:** Seller Defendants' claims are barred, in whole or in part, by Seller's fraud, fraudulent

9

inducement, fraud by nondisclosure, intentional misrepresentation, and prior material breaches of the APA.

**Sixth Affirmative Defense — Estoppel:** Plaintiffs are estopped from obtaining the requested declarations because Seller represented and warranted facts to Buyer, induced Buyer to rely on those representations, concealed contrary facts, and now seeks declarations inconsistent with Seller's own representations and conduct.

**Seventh Affirmative Defense — Waiver:** Plaintiffs waived any right to the relief requested by entering into the APA, making the representations and warranties at issue, agreeing to the indemnity provisions, agreeing to fraud carveouts and remedy-preservation provisions, and accepting the benefits of the transaction.

**Eighth Affirmative Defense — No Entitlement to Fees:** Plaintiffs cannot recover attorneys' fees because their declaratory-judgment action is improper, duplicative, inequitable, and designed to avoid HoliFrog's coercive claims. In federal court, Plaintiffs cannot use the Texas Declaratory Judgments Act to create a fee entitlement that does not otherwise exist.

**Ninth Affirmative Defense — Contractual Limitations Do Not Bar Fraud-Based Relief:** Any contractual limitation invoked by Plaintiffs does not bar HoliFrog's claims for fraud, fraudulent inducement, fraud by nondisclosure, intentional misrepresentation, intentional breach, equitable relief, or enforcement of the APA's indemnity provisions.

**Tenth Affirmative Defense — No Cap for Fraud, Intentional Misrepresentation, Intentional Breach, or Article V Breaches**: The APA's Cap and Threshold do not limit HoliFrog's recovery for Losses arising from fraud, intentional misrepresentation, intentional breach of representations, warranties, or covenants, or breaches of Article V covenants.

**Eleventh Affirmative Defense — Offset, Recoupment, and Escrow Rights**: HoliFrog is entitled to offset, recoupment, escrow preservation, escrow release, and all other remedies available under the APA and applicable law.

**Twelfth Affirmative Defense — Reservation**: HoliFrog reserves all defenses available under the APA, federal law, Texas law, and equity.

## HOLIFROG'S COUNTERCLAIMS

Counterclaimant HoliFrog, Inc. asserts these Counterclaims against Seemark Brands Inc., Emily Parr, and Majeed Hemmat, collectively referred to as the "Seller Defendants," and alleges as follows:

### I.   Introduction

1.      This case arises out of one of the most egregious forms of seller misconduct in a business acquisition: deliberate concealment of information that was not merely material, but dispositive of value. Seller Defendants sold HoliFrog a skincare business by fraudulently hiding that its single largest revenue channel was about to collapse. Seller Defendants knew the truth, concealed it, and then deleted the written evidence.

2.      HoliFrog purchased the HoliFrog skincare brand and business from Seller Defendants on February 27, 2026, pursuant to an Asset Purchase Agreement (the "APA") for ▮▮▮▮▮▮. A central feature of the business was its relationship with ▮▮▮ ▮▮▮▮▮ franchisees, which collectively generated approximately $298,000 in 2025 revenues—roughly 26.5% of total revenue—and who were identified as among HoliFrog's 20 largest customers.

3.      Throughout due diligence, Seller Defendants repeatedly and affirmatively represented that ▮▮▮ ▮▮▮▮▮ franchisees purchased HoliFrog products independently, at the franchisee level, and that there was no reason to expect future revenues from those franchisees to differ materially from historical revenues. Those representations were false. Seller Defendants knew—because ▮▮▮▮▮▮▮▮ merchandising manager had told them in writing in November 2025—that effective

11

March 1, 2026 (one business day after closing), ████████ corporate would cease requiring franchisees to purchase or stock HoliFrog products and would *prohibit* franchisees from using certain HoliFrog backbar products entirely.

4.      Rather than disclose this information as required by the APA, Hemmat deleted the email chain documenting ████████ notification from HoliFrog's email system. In an inbox containing nearly 100,000 emails totaling approximately 55 gigabytes, the targeted deletion of this specific inbound and outbound email chain was not an accident.

5.      The consequences were immediate and catastrophic. Before the mandate change, ████████ franchisees generated average monthly revenues of approximately $24,800. In April 2026—the first full month after closing—those revenues collapsed to less than $2,000.

6.      HoliFrog would not have purchased the Business on the agreed terms—or at all—had Seller Defendants complied with the APA and told the truth about the nature of HoliFrog's relationship with ████████, the corporate mandate that drove historical franchisee purchases, and the material adverse developments that occurred before Closing.

7.      HoliFrog brings this action to recover all damages it has sustained, to unwind the fraudulently induced transaction, and to hold Seller Defendants accountable for their deliberate fraud.

## II.      Parties

8.      HoliFrog is a Texas corporation.

9.      Seemark is a Delaware corporation formerly known as Virgin Frog, LLC.

10.      Parr is an individual and a Seller Party under the APA.

11.      Hemmat is an individual and a Seller Party under the APA.

## III.      Jurisdiction and Venue

12.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because

12

complete diversity exists and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. The Court also has supplemental jurisdiction under 28 U.S.C. § 1367 to the extent any counterclaim requires supplemental jurisdiction.

14. Personal jurisdiction and venue are proper because the Seller Parties consented to jurisdiction and venue in Texas and agreed that legal actions or proceedings concerning the APA and rights and obligations arising under the APA may proceed in Houston, Harris County, Texas, or, where appropriate, the United States District Court for the Southern District of Texas.

15. The APA is governed by Texas law.

16. HoliFrog pleads these counterclaims subject to the APA's jury-waiver provision and reserves all rights concerning the interpretation, applicability, enforceability, and scope of that provision.

### IV. Factual Allegations

**A. The APA.**

17. On February 27, 2026, HoliFrog agreed to buy the HoliFrog skincare brand, assets, and business from the Seller Parties—Emily Parr, Majeed Hemmat, and Seemark Brands Inc.—under an Asset Purchase Agreement dated that same day. The parties closed the transaction on February 27, 2026, and made it effective as of 12:01 a.m. Eastern Standard Time that day.

18. HoliFrog paid ▮▮▮▮▮▮ for the Business. Of that amount, HoliFrog deposited $81,250 into an escrow fund at Bank of Texas to secure Seller's post-closing indemnity obligations.

19. The APA did not require HoliFrog to buy the Business blindly. To the contrary, the APA required Seller to stand behind the condition of the Business it was selling. Seller made detailed representations and warranties concerning the Business, its customers, its contracts, its operations, and the absence of undisclosed facts that could

13

materially impair the Business's value.

20.     Those representations mattered because HoliFrog's value depended in substantial part on its historical revenues and the nature, quality, and expected continuity of its customer relationships. To be clear, HoliFrog understood (and understands) that past performance does not guarantee future results. But that is precisely why Seller's representations mattered: HoliFrog needed truthful information about whether the historical revenues reflected durable customer demand or instead depended on undisclosed arrangements, mandates, or customer-specific conditions that Seller knew would change immediately after Closing. Seller therefore had to disclose known material facts concerning those customer relationships, including any facts that made Seller's representations misleading, incomplete, or no longer true as of Closing.

21.     The APA's Material Customer representations were especially important. Section 3.18 required Seller to identify the Business's top twenty customers for the fiscal year ended December 31, 2025, and for the period through January 31, 2026. Seller disclosed those customers on Section 3.18 of the Disclosure Schedule.

22.     Seller then represented and warranted that no Material Customer had "materially reduced its purchases from or sales to, Seller" since the Financial Statement Date. Seller also represented and warranted that, to Seller's Knowledge, no Material Customer "intends to terminate its relationship, cease to do business or materially decrease its business with the Company."

23.     Seller also made broader representations designed to protect HoliFrog from the very kind of concealed customer collapse at issue here. In Section 3.5, Seller represented and warranted that, since January 5, 2026, no event had occurred that had a Material Adverse Effect and that Seller had conducted the Business only in the ordinary course consistent with past practice. That representation was false or materially misleading because, as of Closing, Seller knew that a material adverse change to the Business's most important revenue channel had already been set in motion, would

14

take effect one business day after Closing, and had not been disclosed to HoliFrog.

24.     In Section 3.14, Seller represented and warranted that all Company Contracts were valid and binding, that no counterparty had given notice of any intention to cancel or terminate any Company Contract, and that Seller was not in default under any Company Contract. To the extent the ███████████ corporate mandate, franchisee stocking requirements, backbar requirements, or related arrangements constituted Company Contracts or otherwise required disclosure, Seller's representations were false or materially misleading.

25.     Seller also gave HoliFrog a full-disclosure representation. In Section 3.29, Seller represented and warranted that no representation or warranty in the APA, and no exhibit, certificate, schedule, or other furnished material, contained or would contain any untrue statement of material fact. Seller further represented and warranted that those materials did not omit—and would not omit as of Closing—any fact necessary to make the statements made not misleading under the circumstances. Seller also warranted that all such statements, representations, warranties, exhibits, certificates, and schedules would be true and complete in all material respects as of the Closing Date, as though made on that date.

26.     Section 3.29 also required Seller to disclose any Seller-specific fact known to Seller—apart from general economic or industry conditions—that could have a material adverse effect on Seller's assets, business, prospects, financial condition, or results of operations. In other words, Seller could not sit silently on known, customer-specific facts that materially impaired the Business and then certify at Closing that its disclosures were true, complete, and not misleading.

27.     The APA imposed an additional notice obligation in Section 5.6. Seller had to promptly notify HoliFrog of any notice from any customer indicating that the customer intended to terminate or materially adversely modify its relationship with the Business. This covenant required Seller to disclose the very information it concealed:

████████ notice that HoliFrog would become optional retail-only, that required backbar use would end, and that the revenue stream generated by ████████ franchisees would materially deteriorate immediately after Closing.

28. Together, these provisions required Seller to tell HoliFrog the truth before taking HoliFrog's money. Seller had to disclose known material facts about the Business's most important customer channel; had to correct representations that had become misleading or incomplete; had to disclose customer notices materially modifying the Business relationship; and had to ensure that its representations and schedules remained true and complete as of Closing. Seller breached those obligations by concealing the ████████ corporate mandate, the July 2025 reduction in required HoliFrog products, the November 2025 notice that HoliFrog would become an optional retail-only brand effective March 1, 2026, the elimination of required backbar use, and Seller's knowledge that those changes would materially impair HoliFrog's largest revenue channel.

B.  ████████  importance to HoliFrog's business

29. Among HoliFrog's disclosed Material Customers were ten ████████ franchisees. Collectively, ████████ franchisees accounted for approximately $298,000 in 2025 revenues—approximately 26.5% of HoliFrog's total revenues for that year.

30. HoliFrog's average monthly revenues from ████████ franchisees were approximately $24,800. This was not a minor or peripheral customer relationship—it was the largest single channel for the business.

31. During due diligence, HoliFrog repeatedly and specifically asked Seller Defendants about HoliFrog's relationship with ████████ corporate and with individual ████████ franchisees. HoliFrog emphasized the importance of this revenue stream to the business's valuation.

32. Seller Defendants repeatedly and expressly represented during due

16

diligence that all purchasing decisions for HoliFrog products were made at the individual franchisee level—that there was no corporate mandate requiring franchisees to purchase HoliFrog products. The independence of each franchisee was further represented in writing by Seller when each individual franchisee was listed as a separate customer in the list of material customers provided by Seller in the Disclosure Schedules. Seller Defendants further represented that there was no reason to expect future ███ ██████ revenues to differ materially from historical revenues.

**C.     Seller Defendants knowingly concealed material adverse changes.**

33.     Those representations were false. Seller Defendants knew, before Closing, that the ██████████ revenue stream was entirely dependent on an undisclosed ██████ ██████ corporate mandate requiring franchisees to stock HoliFrog products. They also knew that mandate was being eliminated.

34.     Unbeknownst to Buyer, HoliFrog's ██████████ relationship had been supported by a corporate purchasing mandate since at least mid-2025. In other words, all of the ██████████ franchisees, including the ten listed on the "top customers", were required to stock certain HoliFrog products.

35.     In July 2025, ██████████ marketing director emailed Hemmat informing him that ██████████ would reduce the number of HoliFrog products its franchisees were required to stock from seven to three, while continuing to require the two backbar products. Seller Defendants did not disclose this reduction to HoliFrog.

36.     In November 2025—three months before Closing—██████████ Merchandising Manager sent an email to Hemmat explicitly informing Seller Defendants that "beginning March 1, 2026, ██████████ will be moving HoliFrog to an optional retail brand within our assortment" and that ██████████ would be "transitioning out of backbar, so HoliFrog will become an optional retail-only brand moving forward." This notification was sent before the APA was signed.

17

37.    Hemmat's response to the November 2025 email makes clear that he immediately understood the severe negative implications this development would have for HoliFrog's business with ███████████ and its franchisees.

38.    Rather than disclose the ███████████ mandate change to HoliFrog as required by the APA, Hemmat deleted the email chain from HoliFrog's email system. Given that Hemmat maintained an email account containing nearly 100,000 emails totaling approximately 55 gigabytes, the targeted deletion of this specific inbound and outbound email chain was intentional and done to prevent HoliFrog from discovering what Seller Defendants knew.

39.    On March 1, 2026—one business day after Closing (pursuant to a corporate mandate communicated in writing to Hemmat in November 2025 by email from ████ ███████ Merchandising Manager)—███████████ ceased requiring franchisees to stock any HoliFrog products. ███████████ also effectively prohibited franchisees from using certain HoliFrog backbar products, specifically TASH8 and Owel Testers, which had generated approximately $38,500 in 2025 sales and had been used exclusively by ███████████ franchisees for in-store services. In addition to the loss of revenue of these two products, being included in the backbar served as direct marketing and increased visibility to end consumers that naturally would lead some to the purchase of additional HoliFrog products (i.e., the loss from being removed from the backbar was greater than just the revenue of these two products).

40.    HoliFrog first learned of the mandate change on a call with ████ ███████ Merchandising Manager on March 31, 2026—after making multiple requests to Hemmat for ███████████ contact information and being stalled for weeks after Closing.

**D.    The collapse of HoliFrog's ███████████ revenues.**

41.    The consequences were immediate and catastrophic. In the month of April 2026, ███████████ franchisee revenues collapsed from an average of $24,800 per month

to less than $2,000.

42.    The mandate change was the direct and proximate cause of this collapse. Without the corporate mandate requiring franchisees to stock HoliFrog products, franchisees ceased ordering those products. HoliFrog did not merely become an optional brand—certain products were effectively prohibited from use by franchisees.

43.    Seller Defendants knew before Closing that this collapse would occur. They sold HoliFrog a business whose most significant revenue stream had been materially impaired, without disclosing the magnitude or significance of that impairment. They then took affirmative steps to conceal the evidence of their knowledge.

**E.      HoliFrog submits its Claim Notice.**

44.      On May 11, 2026, HoliFrog's counsel sent Seller Defendants a formal Claim Notice and Demand for Indemnification pursuant to APA § 7.4(a). The Claim Notice demanded $750,000 in indemnification and notified Seller Defendants that HoliFrog intended to file suit for fraud if the demand was not satisfied within 30 days. HoliFrog also provided a Chapter 38 presentment pursuant to Texas Civil Practice and Remedies Code Chapter 38.

45.      To date, Seller Defendants have not satisfied HoliFrog's demand, necessitating this action.

## V.      Causes of Action

### Count I: Fraud

46.      HoliFrog incorporates by reference each of the preceding paragraphs as if fully set forth herein.

47.      Seller Defendants made material misrepresentations of existing fact to HoliFrog before and in connection with the Closing, including but not limited to:

- Representing throughout due diligence that all purchasing decisions by ▇▇▇▇▇▇▇ franchisees were made at the individual franchisee level and that there was no corporate mandate requiring franchisees to purchase HoliFrog products, when Seller Defendants knew this was false;

- Representing in Section 3.18 of the APA that no Material Customer had reduced or intended to reduce its purchases from Seller, when Seller Defendants knew that ▇▇▇▇▇▇▇ corporate had already determined to eliminate the mandate requiring franchisees to stock HoliFrog products effective March 1, 2026. Further, when this representation is made in conjunction with Section 3.29 "No representation or warranty of Seller in this Agreement or in any exhibit, certificate, or schedule attached or furnished, contains, or on the Closing Date will contain, any untrue statement of material fact or omits, or on the Closing Date will omit, to state any fact necessary in order to make the statements contained therein, in light of the circumstances in which they are made, not misleading", the failure of Seller Defendants to disclose the known change in its relationship

20

with ███████████ that was to be effective mere days after Closing is all the more damning;

- Representing in Section 3.5 of the APA that no Material Adverse Effect had occurred since January 5, 2026, and that Seller had conducted the Business only in the ordinary course consistent with past practice, when Seller Defendants knew that a material adverse change to the Business's largest revenue channel had already been set in motion, would take effect one business day after Closing, and had not been disclosed to HoliFrog.

- Representing in Section 3.29 of the APA that no material fact had been omitted from representations and schedules, and that Seller had no Knowledge of any fact that may have a material adverse effect on the business, when Seller Defendants had received written notice of the ████ ████████ mandate termination before Closing;

- Representing in Section 3.29 of the APA that no material fact had been omitted from representations and schedules, and that Seller had no Knowledge of any fact that may have a material adverse effect on the business, when Seller Defendants had intentionally misrepresented the business relationship with ███████████ by listing each franchisee as an independent customer on the Disclosure Schedules was in itself a breach as each franchisee was under a central corporate mandate and therefore the relationship should have been disclosed as a single customer;

- Representing in Section 3.14 of the APA that no counterparty to any Company Contract had given notice of its intention to materially reduce the scope of its relationship, when Seller Defendants had received written notice from ███████████ of the mandate change.

48.    Seller Defendants knew these representations were false when made. The November 2025 email from ███████████ Merchandising Manager placed Seller Defendants on actual notice of the mandate change before the APA was signed and before Closing. Hemmat's response to that email further confirms his understanding of the severe implications.

## Count II: Fraudulent Inducement

49.    HoliFrog incorporates by reference each of the preceding paragraphs as if fully set forth herein.

50.    The APA is a contract. Seller Defendants induced HoliFrog to enter into and close the APA through fraudulent misrepresentations and omissions as described above.

51.    Seller Defendants' fraudulent misrepresentations were made before and during the negotiation and execution of the APA and were made with the intent to induce HoliFrog to enter into and close the transaction.

52.    HoliFrog justifiably relied on Seller Defendants' misrepresentations in entering into and closing the APA. HoliFrog would not have entered into the APA on the agreed terms—or at all—had it known that the ██████████ corporate mandate was being terminated effective one business day after Closing.

53.    As a result of Seller Defendants' fraudulent inducement, HoliFrog is entitled to: (a) rescission of the APA and unwinding of the entire transaction, with return of all consideration paid; (b) alternatively, damages equal to the difference between the price paid and the true value of what HoliFrog received; (c) all consequential, incidental, and special damages; and (d) exemplary damages.

54.    Because the APA's exclusive remedy provision in Section 7.8 expressly carves out claims based on fraud, HoliFrog's fraud and fraudulent inducement claims are not limited by any contractual cap or threshold.

## Count III: Fraud By Non-Disclosure

55.    HoliFrog incorporates by reference each of the preceding paragraphs as if fully set forth herein.

56.    Texas law imposes a duty to disclose when a party knows material facts and the other party does not have an equal opportunity to discover the truth.

57.     Seller Defendants had a duty to disclose the ▮▮▮▮▮▮▮ mandate change to HoliFrog because: (a) Seller Defendants had superior knowledge of the mandate and its elimination; (b) HoliFrog did not have equal opportunity to discover the truth, as the relevant information was in Seller Defendants' possession and Seller Defendants actively concealed it by deleting the email chain; (c) the APA expressly required disclosure of all material facts and specifically obligated Seller to notify Buyer of any customer communication materially adversely modifying its relationship with the Business; and (d) Seller Defendants' partial representations about the ▮▮▮▮▮▮▮ relationship created a duty to disclose the full truth.

58.     Seller Defendants failed to disclose the July 2025 email reducing required SKUs, the November 2025 email eliminating the mandate, and the corporate purchasing arrangement that had driven historical revenues, all of which were material.

59.     HoliFrog suffered damages as a direct and proximate result of Seller Defendants' failure to disclose, as alleged herein.

### Count IV: Negligent Misrepresentation

60.     In the alternative to its fraud-based claims, HoliFrog incorporates by reference each of the preceding paragraphs as if fully set forth herein.

61.     Seller Defendants supplied information to HoliFrog in the course of their business—the sale of the HoliFrog business—for use by HoliFrog in guiding its business decision to acquire the business.

62.     Seller Defendants provided false information without reasonable care as to its truth, including representations about the ▮▮▮▮▮▮▮ relationship, the independence of franchisee purchasing decisions, and the absence of Material Adverse Effects, all as alleged above.

63.     HoliFrog justifiably relied on Seller Defendants' representations in entering into and closing the APA and paying ▮▮▮▮▮▮

23

64.     As a direct and proximate result of Seller Defendants' negligent misrepresentations, HoliFrog sustained damages as alleged herein.

## Count V: Breach of Contract

65.     HoliFrog incorporates by reference each of the preceding paragraphs as if fully set forth herein.

66.     The APA is a valid and binding contract among HoliFrog and the Seller Parties.

67.     HoliFrog performed all of its obligations under the APA, including paying the Purchase Price of ▮▮▮▮▮▮▮▮

68.     Seller Defendants materially breached the APA, including but not limited to the following provisions:

- Section 3.18 (Material Customers): Seller Defendants breached the representation and warranty that no Material Customer had materially reduced its purchases from Seller and that to Seller's Knowledge no Material Customer intended to materially decrease its business with the Company. Seller Defendants knew before Closing that ▮▮▮▮▮▮▮▮ corporate had determined to eliminate the mandate requiring franchisees to stock HoliFrog products, which constituted knowledge that a Material Customer intended to materially decrease its business. Further, when this representation is made in conjunction with Section 3.29 "No representation or warranty of Seller in this Agreement or in any exhibit, certificate, or schedule attached or furnished, contains, or on the Closing Date will contain, any untrue statement of material fact or omits, or on the Closing Date will omit, to state any fact necessary in order to make the statements contained therein, in light of the circumstances in which they are made, not misleading", the failure of Seller Defendants to disclose the known change in its relationship with ▮▮▮▮▮▮▮▮ that was to be effective mere days after Closing is all the more damning;

- Section 3.5 (Absence of Certain Changes): Seller Defendants breached the representation and warranty that, since January 5, 2026, no event had occurred that had a Material Adverse Effect and that

24

Seller had conducted the Business only in the ordinary course consistent with past practice. As of Closing, Seller Defendants knew that ███████████ had already decided to eliminate the corporate mandate that drove HoliFrog's largest revenue channel, that the change would take effect one business day after Closing, and that the resulting loss would materially impair the Business. Seller Defendants failed to disclose those facts and nevertheless certified the Section 3.5 representation as true;

- Section 3.14 (Contracts): Seller Defendants breached the warranty concerning Company Contracts by failing to disclose the arrangements and understandings with ███████████ corporate that had driven historical revenues, and by representing that no counterparty had indicated an intent to cancel or materially reduce the scope of any Company Contract;

- Representing in Section 3.29 of the APA that no material fact had been omitted from the APA, the Disclosure Schedules, or Seller's other furnished materials, when Seller Defendants knew that listing individual ███ ███████ franchisees as separate Material Customers concealed the central fact that those franchisees' historical purchases were driven by a ███████████ corporate mandate that Seller knew would end one business day after Closing;

- Section 5.6 (Notification of Certain Matters): Seller Defendants breached the covenant to notify HoliFrog of any customer communication materially adversely modifying its relationship with the Business; and

- Section 5.15 (Customer and Other Business Relationships): Seller Defendants breached the covenant to cooperate with HoliFrog to maintain business relationships and not to take any action that would diminish the value of the Acquired Assets after Closing.

69.    As a direct and proximate result of Seller Defendants' breaches of the APA, HoliFrog has sustained damages in an amount to be determined at trial, exceeding $750,000.

### Count VI: Contractual Indemnification

70.    HoliFrog incorporates by reference each of the preceding paragraphs as if

25

fully set forth herein.

71.     Section 7.2 of the APA obligates Seller Defendants to defend, indemnify, and hold harmless HoliFrog from and against any and all Losses directly or indirectly relating to, arising out of, or resulting from: (a) any breach of, or inaccuracy in, any representation or warranty under Article III; (b) any default by Seller in the performance or observance of any of its covenants or agreements under the APA; and (c) any Retained Liabilities.

72.     HoliFrog provided timely written notice of its claim on May 11, 2026, pursuant to APA § 7.4(a), constituting a proper Claim Notice.

73.     Seller Defendants' breaches of the APA, as alleged herein, directly and proximately caused Losses to HoliFrog, as defined in the APA, including: overpayment for the acquired assets and business; diminution in value of the business and acquired assets; lost customer revenue; costs of investigation, mitigation, and remediation; legal, consultant, accounting, and other professional fees; fees and costs incurred in enforcing indemnification rights; prejudgment interest; and all other Losses recoverable under the APA.

74.     Section 7.6 of the APA expressly provides that the Cap ($162,500) and Threshold Amount ($16,250) do not apply to Losses arising from fraud, intentional misrepresentation, or intentional breach of a representation, warranty, or covenant. All indemnification obligations for such Losses are unlimited.

75.     Because Seller Defendants' breaches were intentional and fraudulent, as alleged herein, there is no applicable cap on indemnification, and Seller Defendants are liable for all of HoliFrog's Losses.

76.     Section 7.5 of the APA provides that Losses payable to HoliFrog are satisfied first from the Escrow Fund. HoliFrog demands that the Escrow Fund be preserved and released to HoliFrog, and that Seller Defendants pay all Losses exceeding the Escrow Fund balance.

26

### Count VII: Rescission/ Unwinding of the Transaction

77.    HoliFrog incorporates by reference each of the preceding paragraphs as if fully set forth herein.

78.    HoliFrog was induced to enter into the APA and close the transaction by Seller Defendants' fraudulent misrepresentations and omissions as alleged herein. HoliFrog would not have entered into the APA on the agreed terms, or at all, had it known the truth about the ██████████ mandate termination.

79.    Because HoliFrog's consent to the APA was obtained by fraud, HoliFrog is entitled to rescind the APA and restore the parties to their pre-contract positions. Rescission and unwinding of the transaction is an appropriate remedy because: (a) Seller Defendants obtained HoliFrog's consent through fraudulent misrepresentations; (b) HoliFrog cannot otherwise be fully compensated for the harm caused by the fraud; and (c) restoring the parties to their pre-contract positions is feasible and just.

80.    Upon rescission, Seller Defendants must return the full Purchase Price of ███████, together with all professional fees, transaction costs, and other expenses HoliFrog incurred in connection with the acquisition, the operation of the business post-Closing, and the prosecution of this action.

81.    HoliFrog is ready, willing, and able to restore the acquired assets or otherwise account for any benefits received as the Court may require to accomplish equitable rescission.

82.    In the alternative, if rescission is not granted, HoliFrog seeks all damages arising from Seller Defendants' fraud and breach of contract as alleged herein.

### Count VIII: Unjust Enrichment (In the Alternative)

83.    HoliFrog incorporates by reference each of the preceding paragraphs as if fully set forth herein, and pleads this count in the alternative.

84.    If for any reason the Court determines that the APA cannot be enforced or

that contractual remedies are insufficient, HoliFrog pleads that Seller Defendants have been unjustly enriched by retaining $1,625,000—or the portion thereof attributable to the ▮▮▮▮▮ revenue stream—when the business they sold had already lost its most significant revenue channel as a result of their own failure to disclose.

85.    It would be inequitable for Seller Defendants to retain the full benefit of the purchase price under these circumstances. HoliFrog is entitled to restitution of amounts by which Seller Defendants were unjustly enriched.

## VI.    Damages

86.    As a direct and proximate result of Seller Defendants' conduct, HoliFrog has sustained and continues to sustain substantial damages, including without limitation:

- Overpayment for the acquired assets and business based on inflated historical revenues that Seller Defendants knew were not sustainable;

- Diminution in value of the business and acquired assets caused by the loss of the ▮▮▮▮▮ revenue channel;

- Lost revenues from ▮▮▮▮▮ franchisees, in an amount to be proved at trial but totaling hundreds of thousands of dollars over the useful life of the investment;

- Costs of investigating, mitigating, and addressing the loss of the ▮▮▮ ▮▮▮▮ revenue channel;

- Legal, consultant, accounting, and other professional fees incurred in connection with the transaction, investigation, and enforcement of HoliFrog's rights;

- Prejudgment interest;

- Exemplary damages based on Seller Defendants' fraudulent, malicious, and intentional conduct; and

- All other Losses recoverable under the APA or applicable law.

87.    HoliFrog's damages are continuing and are not yet fully liquidated. HoliFrog currently estimates that its Losses exceed the value of the escrow fund and

28

may exceed the value of the transaction itself, exclusive of exemplary damages.

## VII.   Attorneys' Fees

88.     HoliFrog is entitled to recover its reasonable and necessary attorneys' fees and costs pursuant to: (a) Section 7.2 of the APA, which includes legal fees in the definition of "Losses" subject to indemnification; (b) Chapter 38 of the Texas Civil Practice and Remedies Code, based on HoliFrog's presentment on May 11, 2026, and Seller Defendants' failure to tender the just amount owed within 30 days; and (c) all other applicable statutes and grounds.

## PRAYER FOR RELIEF

WHEREFORE, Defendant/Counter-Plaintiff HoliFrog, Inc. respectfully requests that this Court enter judgment in its favor and against Seller Defendants, jointly and severally, as follows:

- Rescission of the APA and unwinding of the transaction, with return of the full purchase price of ███████, together with all costs, fees, and expenses incurred by HoliFrog in connection with the transaction and the operation of the business after Closing;

- In the alternative, actual damages in an amount to be determined at trial, exceeding $750,000;

- Exemplary damages in the maximum amount permitted by law;

- An order preserving the Escrow Fund during the pendency of this action and directing release of the Escrow Fund to HoliFrog upon entry of judgment;

- Prejudgment and post-judgment interest at the maximum rate permitted by law;

- Reasonable and necessary attorneys' fees and costs pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, the APA, and all other applicable grounds;

- All injunctive and equitable relief as may be appropriate, including enforcement of preservation obligations and spoliation sanctions; and

- Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

JORDAN, LYNCH & CANCIENNE PLLC

By: /s/ *Jeb Golinkin*

    Joseph ("Jeb") W. Golinkin II
    State Bar No. 24087596
    Charlotte Nicholas
    State Bar No. 24127872
    Grayson Thompson
    State Bar No. 24138592
    Jordan, Lynch & Cancienne PLLC
    1980 Post Oak Blvd., Suite 2300
    Houston, Texas 77056
    Telephone: 713.955.4019
    Facsimile: 713.955.9644
    jgolinkin@jlcfirm.com
    cnicholas@jlcfirm.com
    gthompson@jlcfirm.com

**ATTORNEYS FOR HOLIFROG, INC.**

## CERTIFICATE OF SERVICE

This certifies that a copy of the above and foregoing was served on the following counsel of record by means of electronic service on May 27, 2026:

Josh Thomas
Kean Miller LLP
711 Louisiana St. Ste. 1800
Houston, TX 77002
Josh.thomas@keanmiller.com

Sean McLaughlin
Zoe Vermeulan
909 Poydras St.
New Orleans, La. 70112
Sean.mclaughlin@keanmiller.com
Zoe.vermeulen@keanmiller.com

*Attorneys for Seemark Brands, Inc., Emily Parr, and Majeed Hemmat*

*/s/ Jeb Golinkin*
Jeb Golinkin